IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 29, 2007**

Charles R. Fulbruge III
Clerk

No. 06-50587

UNITED STATES OF AMERICA

Plaintiff - Appellee

V.

VINNIE BILOTTO

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:04-CR-343-ALL

Before JONES, Chief Judge, and REAVLEY and SMITH, Circuit Judges.

PER CURIAM:[*]

Following a jury trial, Vinnie Bilotto was convicted on four counts of mail fraud in violation of 18 U.S.C. § 1341 for his role in procuring two "key person" life insurance policies. Bilotto appeals, contending that (1) insufficient evidence supported the verdict; (2) the district court improperly limited his ability to cross-examine witnesses; (3) the district court denied him a fair trial by disparaging his counsel in front of the jury; (4) the district court erroneously refused to give a good-faith jury instruction; (5) the district

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court improperly admitted irrelevant and unfairly prejudicial evidence; and (6) the cumulative effect of the errors made at trial, even if individually harmless, require reversal. For the reasons that follow, we affirm.

1.  To prove Bilotto committed mail fraud in violation of 18 U.S.C. § 1341, the Government had to show "(1) a scheme to defraud; (2) the use of the mail to execute that scheme; and (3) the specific intent to defraud." United States v. Harms, 442 F.3d 367, 372 (5th Cir. 2006) (quoting United States v. Bieganowski, 313 F.3d 264, 275 (5th Cir. 2002)), cert. denied, 127 S. Ct. 2875 (2007). Bilotto contends that the Government failed to prove that he had the specific intent to defraud in that the definition of "key person" provided at the trial was too vague to prove his belief and fraudulent intent. When reviewing for the sufficiency of the evidence, however, this court must affirm the conviction "if a rational trier of fact could have found that the evidence established the elements of the offense beyond a reasonable doubt." United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). Bilotto cannot meet that burden.

    While several witness did not recite the same exact words when defining "key person," a common thread ran through each definition: a key person was essentially somebody who did valuable work for the company and whose death would cause the company a significant loss. Moreover, the exact meaning of the phrase is a red herring: regardless of whether Bilotto knew the definition, a rational jury could have found that Bilotto had an intent to defraud. Karen Hathaway testified that in filling out the insurance form, Bilotto provided her information about Donald Taylor. Taylor's mother, among others, provided evidence

2

indicating that this information was obviously false. Likewise, testimony indicated that Bilotto had taken out a fraudulent key-person insurance policy on another employee, Gilbert Edge. A rational jury could properly infer from this, and other pieces of evidence, that Bilotto had the requisite criminal intent.

2. Bilotto next contends that the district court violated his Sixth Amendment rights by limiting cross-examination of Hathaway. "Alleged violations of the Confrontation Clause are reviewed de novo, but are subject to harmless error analysis." United States v. Bell, 367 F.3d 452, 465 (5th Cir. 2004). If no Sixth Amendment violation exists, this court reviews the district court's limitation on cross-examination for abuse of discretion. United States v. Townshend, 31 F.3d 262, 267–68 (5th Cir. 1994). Here, the district court was within its discretion in its handling of Hathaway's cross-examination.

Bilotto's complains that the district court unreasonably limited and ultimately denied his attempts to impeach Hathaway with an allegedly inconsistent prior statement she made regarding whether Bilotto had helped her fill out the key person insurance form. While the district court did restrict the flow of questioning regarding what Hathaway had previously said—in part, because of the confusing way in which defense counsel questioned her—the district court gave Bilotto an opportunity to cross-examine Hathaway on her statement, stating that defense counsel could ask Hathaway about "anything under the sun." Defense counsel did not meaningfully use that opportunity. But the opportunity is all that the law requires. See Delaware v. Fensterer, 474 U.S. 15, 20, 106 S. Ct. 292, 294 (1985) (per curiam)

("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."). Bilotto claims that he could not ask Hathaway questions about her prior statement because the district court said he could not "use" the transcript of the statement. But the district court seemed to be referring only to actual physical use of the transcript as opposed to questions about what she had said. The jury was also able to hear Hathaway's explanation of what she claimed she meant.

While the district court might be faulted for stating in front of the jury that the prior statement was not inconsistent with the witness's testimony, that statement was harmless. The district court warned the jury that except for his instruction "on the law," they should "disregard anything [he] may have said during the trial in arriving at your own findings as to the facts." See United States v. McClatchy, 249 F.3d 348, 358 (5th Cir. 2001) (holding that a judge's improper comments in front of the jury could be rendered harmless error by an instruction similar to the one given here). Additionally, as noted above, defense counsel was provided an opportunity to explore Hathaway's allegedly inconsistent statement.

Finally, Bilotto asserts that the district court improperly limited the cross-examination of three other witness. After reviewing the record, we have determined that the district court did not improperly limit cross-examination of those witnesses.

3. Bilotto also contends that the district court denied him a fair trial with its treatment of his counsel. In reviewing claims of judicial

misconduct, this court's role is to "determine whether the judge's behavior was so prejudicial that it denied the defendant a fair, as opposed to a perfect, trial." United States v. Bermea, 30 F.3d 1539, 1569 (5th Cir. 1994). The proceedings must be viewed as a whole to determine whether the judge's actions "amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." Id. Bilotto's argument primarily rests on several sarcastic comments the district court made in front of the jury that were allegedly humiliating for defense counsel, thus making it impossible for the attorney to win the respect of the jury.

The district court's conduct did not deprive Bilotto of a fair trial. Overall, the trial was conducted in an impartial manner. The challenged exchanges are minor, isolated incidents, which seem to have been taken as a joke at the time. And while the district court, at times, interjected himself into a witness's cross-examination, his questions were aimed at clarifying the witness's testimony.

4. Bilotto next argues that the district court erred when it refused all three of his good-faith jury instructions. As a threshold issue, however, the parties disagree on the standard of review: Bilotto contends that he objected to the exclusion of his requested good-faith defense instruction and the standard of review is therefore abuse of discretion. United States v. Chaney, 964 F.2d 437, 444 (5th Cir. 1992). The Government counters that Bilotto failed to preserve error and thus plain-error review is warranted. Even assuming that Bilotto did preserve error, he cannot show that the

district court abused its discretion in denying his requested good-faith charges.

This court has already held that the failure to give a good-faith instruction is not reversible error as long as the defendant has the opportunity to argue good faith to the jury and a good-faith instruction is substantially given to the jury through an instruction on the meaning of the word "knowingly." Id. at 444–46. Here, Bilotto was never denied an opportunity to argue good faith to the jury. The jury was also essentially given a good-faith instruction through the definition of "knowingly," which the district court defined as doing something " voluntarily and intentionally, not because of mistake or accident" and through the definition of "intent to defraud," which the district court defined as "an intent to deceive or cheat someone."

5. Bilotto further argues that the district court erred when it admitted testimony from Taylor's mother that she did not have sufficient funds from a life insurance policy to pay for her son's funeral expenses. Bilotto argues that the information should have been excluded because it was irrelevant, and even if it were relevant, any purported probative value was substantially outweighed by the testimony's unfairly prejudicial effects. See Fed. R. Evid. 403. In determining whether the district court erred, this court reviews evidentiary rulings for an abuse of discretion, although that review is heightened in criminal cases. United States v. Anderson, 933 F.2d 1261, 1267-68 (5th Cir. 1991). The district court did not abuse that discretion here.

Taylor's mother's statement that she could not afford a funeral was relevant to show that Taylor himself did not have

much money, supporting the Government's contention that Bilotto lied about Taylor's alleged $50,000 annual salary. <u>See</u> Fed. R. Evid. 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more . . . or less probable than it would be without the evidence" (emphasis added)). Furthermore, the district court was within its discretion to determine that the unfair prejudice did not substantially outweigh the statement's probative value.

6. Finally, Bilotto contends that the cumulative effect of the multiple errors alleged resulted in an unfair trial, requiring reversal. There were not multiple errors. <u>See</u> <u>United States v. Villarreal</u>, 324 F.3d 319, 328 (5th Cir. 2003).

AFFIRMED.